| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-1**<br><br>**FREEDMAN LAW, LLC**<br>Terri Jane Freedman, Esq.<br>9 Elkin Drive<br>Livingston, New Jersey 07039<br>Telephone: (973) 985-9408<br>E-mail: tjfreedman@freedmanlawllc.com<br><br>*Attorneys for Nancy Isaacson, Chapter 7 Trustee* |

| | |
|---|---|
| In re:<br><br>AKESIS, LLC,<br><br>               Debtor. | Case No.: 15-22985 (JKS)<br><br>Chapter 7 |

**CERTIFICATION OF NANCY ISAACSON IN SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENT OF ALL CLAIMS OF TRUSTEE AGAINST QUARTESIAN, LLC, AND HEALTHPOINT MEDICAL GROUP, INC. PURSUANT TO RULE 9019**

Nancy Isaacson certifies as follows:

1. I am the duly appointed Chapter 7 Trustee for the bankruptcy estate of Debtor, Akesis, LLC (the "Debtor"). I make this certification, upon my personal knowledge, in support of the motion (the "Settlement Motion") filed on my behalf, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, seeking an order approving the proposed settlement of all claims that I have against Quartesian, LLC ("Quartesian") and HealthPoint Medical Group, Inc. ("HealthPoint").

2. The Debtor filed a voluntary Chapter 7 bankruptcy petition on July 10, 2015 (the "Petition Date").

3. Thereafter, on July 13, 2015, I was appointed Chapter 7 Trustee in this matter.

**The Quartesian Settlement**

4. Upon investigation of the financial affairs of the Debtor, including a review of

Debtor's books and records, the Trustee came to believe that Quartesian had received a transfer of funds from the Debtor in the amount of $119,438.18 within 90 days prior to the Petition Date, which the Trustee believes may be avoided as a preference payment pursuant to Section 547 of the United States Bankruptcy Code, 11 U.S.C. § 547(b) (the "Quartesian Claim").

5. I filed an adversary proceeding against Quartesian based on the Quartesian Claim on September 28, 2016, Adv. Proc. No. 16-01748 (JKS) (the "Quartesian Adv. Proc.").

6. Through negotiations conducted by my counsel and counsel for Quartesian, an agreement was reached as to the Quartesian Claim. The terms of the settlement are incorporated into a written settlement agreement, a copy of which is attached to this certification as **Exhibit A** (the "Quartesian Settlement Agreement").

7. The terms of Quartesian Settlement Agreement include that within thirty days of an order approving the settlement becoming final and non-appealable, Quartesian shall pay to the Trustee the total sum of $33,500.00 (the "Quartesian Payment"). Upon clearance of the Quartesian Payment, the Trustee, on behalf of the Debtor and the Estate, shall be deemed to have released from any claims the Trustee ever had against the Quartesian Released Parties (as defined in the Settlement Agreement) in her capacity as the Trustee for the Estate, and Quartesian shall be deemed to have released the Estate from any and all claims it may hold against the Estate.

8. Upon clearance of the Quartesian Payment, the Quartesian Adv. Proc will be dismissed.

## The HealthPoint Settlement

9. Upon investigation of the financial affairs of the Debtor, including a review of Debtor's books and records, the Trustee came to believe that HealthPoint had received a transfer of funds from the Debtor in the amount of $15,840.56 within 90 days prior to the Petition Date, which the Trustee believes may be avoided as a preference payment pursuant to Section 547 of the United States Bankruptcy Code, 11 U.S.C. § 547(b) (the "HealthPoint Claim").

10. I filed an adversary proceeding against HealthPoint based on the HealthPoint Claim on June 29, 2017, Adv. Proc. No. 17-01414 (JKS) (the "HealthPoint Adv. Proc.").

11. Through negotiations conducted by my counsel and counsel for HealthPoint, an agreement was reached as to the HealthPoint Claim. The terms of the settlement are incorporated

2

into a written settlement agreement, a copy of which is attached to this certification as **Exhibit B** (the "HealthPoint Settlement Agreement").

12. The terms of HealthPoint Settlement Agreement include that within ten days of an order approving the settlement becoming final and non-appealable, HealthPoint shall pay to the Trustee the total sum of $7500 (the "HealthPoint Payment"). Upon clearance of the HealthPoint Payment, the Trustee, on behalf of the Debtor and the Estate, shall be deemed to have released from any claims the Trustee ever had against the HealthPoint Released Parties (as defined in the Settlement Agreement) in her capacity as the Trustee for the Estate, and HealthPoint shall be deemed to have released the Estate from any and all claims it may hold against the Estate.

13. Upon clearance of the HealthPoint Payment, the HealthPoint Adv. Proc will be dismissed.

14. The settlement of the Quartesian Claim and the HealthPoint Claim, will be included in the fund to pay a dividend to unsecured creditors.

15. In agreeing to these settlements, I have exercised my business judgment and have weighed the merits of the Quartesian Claim and the HealthPoint Claim, the cost of the litigation of these claims and the likelihood of obtaining a greater amount if the claims were litigated. In the exercise of my business judgment, I have determined that the settlements are in the best interest of the Estate and of the creditors.

16. Accordingly, I am seeking court approval of the proposed settlement of the Quartesian Claim and the HealthPoint Claim by this Settlement Motion.

I hereby certify that the foregoing statements by me are true. I am aware that if any of the foregoing statements by me are willfully false, I am subject to punishment.

Dated: July 29, 2019

*/s/ Nancy Isaacson*
Nancy Isaacson

# EXHIBIT A

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in compliance with D.N.J. LBR 9004-1 <br><br> **FREEDMAN LAW, LLC** <br> Terri Jane Freedman, Esq. <br> 9 Elkin Drive <br> Livingston, New Jersey 07039 <br> Telephone: (973) 985-9408 <br> E-mail: tjfreedman@freedmanlawllc.com <br><br> *Attorneys for Nancy Isaacson, Chapter 7 Trustee* | |
| In re: <br><br> AKESIS, LLC, <br><br>     Debtor. | Case No.: 15-22985 (JKS) <br><br> Chapter 7 |
| NANCY ISAACSON, CHAPTER 7 TRUSTEE, <br><br>     Plaintiff(s), <br><br> v. <br><br> QUARTESIAN, LLC, <br><br>     Defendant(s). | Adv. No.: 16-01748 (JKS) <br><br> Judge: Sherwood |

## SETTLEMENT AGREEMENT

This Agreement is made as of the date indicated below, by and between Nancy Isaacson, Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate of Akesis, LLC ("Estate"), and Quartesian, LLC ("Quartesian").

WHEREAS, Debtor, Akesis, LLC ("Debtor") filed a voluntary petition for relief under Title 11, Chapter 7 of the United States Code (the "Bankruptcy Code") on July 10, 2015 (the "Petition Date"); and

WHEREAS, on or about July 13, 2015, the Trustee was appointed pursuant to 11 U.S.C. § 701; and

WHEREAS, upon her investigation of the financial affairs of the Debtor, including her review of the Debtor's books and records, the Trustee came to believe that Quartesian had received a transfer of funds from the Debtor in the amount of $119,438.18 within 60 days of the Petition Date, which the Trustee believes may be avoided by her as a preference payment pursuant to Section 547 of the Bankruptcy Code ("Trustee's Preference Claim"); and

WHEREAS, on or about September 28, 2016 the Trustee commenced adversary proceeding number 16-01748 against Quartesian seeking to avoid and recover the above-referenced transfers under Sections 547 and 550 of the Bankruptcy Code ("Adversary Proceeding"); and

WHEREAS, the parties, after negotiation and discussion, have agreed to compromise the Trustee's Preference Claim and the Adversary Proceeding; and

WHEREAS, in consideration of the foregoing and as and for their resolution and settlement of the issues in dispute between them without resort to litigation, the parties to this Settlement Agreement hereby agree to the following terms and conditions in settlement of the Trustee's Preference Claim and the Adversary Proceeding, subject to the approval of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure:

1. Within twenty (20) days of the execution of this Settlement Agreement (the "Agreement"), the Trustee shall cause to be filed with the Bankruptcy Court a Notice of Proposed Compromise or Settlement of Controversy in the form attached as **Exhibit A** and shall file a motion, in form and substance reasonably acceptable to Quartesian, with the Bankruptcy Court seeking an Order of the Bankruptcy Court approving this Agreement (the "Order"), in form and substance reasonably acceptable to Quartesian.

2. Within thirty (30) days of the Order becoming final and non-appealable, Quartesian shall pay to the Trustee, in full and final settlement and full and final release of the Trustee's Preference Claim, the Adversary Proceeding, and any and all claims held by the Trustee against any of the Quartesian Released Parties (as such term is hereinafter defined), the total sum of $33,500 (the "Settlement Payment") by check made payable to "**Nancy Isaacson, Chapter Trustee for the Estate of Akesis, LLC**" **and mailed to Nancy Isaacson, Chapter 7 Trustee, Greenbaum, Rowe, Smith & Davis LLP, 75 Livingston Avenue, Roseland, NJ 07068**.

3. Upon clearance of the Settlement Payment from Quartesian, the Trustee, on behalf of the Debtor and the Estate, shall be deemed to have released, acquitted and forever discharged Quartesian and its respective parents, subsidiaries, affiliates, officers, managing directors, shareholders, members, agents, employees, successors and assigns (the "Quartesian Released Parties") of and from any and all claims relating to the Trustee's Preference Claim, the Adversary Proceeding, as well as any and all claims, allegations, rights, covenants, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, whether known or unknown, the Trustee ever had, now has or hereinafter can, shall or may have, against the Quartesian Released Parties in her capacity as the Trustee for the Estate, and, except as set forth in paragraph 4 below, the Quartesian Released Parties shall be deemed to have released the Estate of and from any and all

claims, allegations, rights, covenants, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, whether known or unknown, the Quartesian Released Parties ever had, now has or hereinafter can, shall or may have, against the Estate and the Trustee in her capacity as the Trustee for the Estate. Any and all claims asserted by the Trustee in the future against Quartesian, shall be disallowed in their entirety.

4. Upon clearance of the Settlement Payment, Quartesian will be granted a claim against the Estate for the amount paid in this Settlement Agreement pursuant to Bankruptcy Code section 502(h).

5. Immediately, upon clearance of the Settlement Payment from Quartesian, the Trustee will dismiss the Adversary Proceeding with prejudice.

6. Each party has the full power and authority and has taken all required action necessary to permit it to execute, deliver and perform its obligations under this Agreement.

7. Subject to Bankruptcy Court approval as contemplated herein, this Agreement constitutes a valid and legally binding obligation of each of the parties hereto, enforceable against each party, respectively, in accordance with its terms.

8. The interpretation and construction of this Agreement shall be governed by the laws of the State of New Jersey, without giving effect to any choice of law or conflict of law rules, principles or provisions. The Bankruptcy Court shall retain jurisdiction to enforce this Agreement and any action, suit or proceeding arising out of or relating to this Agreement.

9. No amendment, waiver or modification of this Agreement or any covenant, condition, or limitation of this Agreement shall be valid unless memorialized in writing and executed by the parties hereto.

10. This Agreement contains the final and entire settlement between the parties regarding the resolution of the subject matter of this Agreement and is intended to be an integration of final expression of all prior negotiations, understandings and agreements between the parties regarding the resolution of same. Any other representations, undertakings or agreements with respect to the subject matter of this Agreement, whether oral, written or implied, are merged into and are superceded by the terms of this Agreement.

11. The parties have had the opportunity to draft, review, and edit the terms of this Agreement, no presumption for or against any party arising out of drafting all or any part of this Agreement will be applied in any action relating to, connected to, or involving this Agreement.

12. By entering into this Agreement, no party intends to acknowledge or shall be deemed to have acknowledged any liability or responsibility for damages. Rather, the parties to this Agreement merely wish to resolve disputed claims. It is expressly understood and agreed that this Agreement shall not be construed as an admission of liability by the parties to this Agreement, their affiliates or anyone else.

13. This Agreement may be executed by facsimile signatures or electronically transmitted signatures in .pdf form, which shall be deemed original, and in one or more counterparts, each of which shall be deemed to be a duplicate original, but all of which taken together, shall constitute a single instrument.

14. This Agreement shall be binding upon the parties and their successors and assigns.

15. By the signatures below, the parties to this Agreement acknowledge that they fully understand and accept the terms contained in this Agreement, and represent and agree that their signatures are freely, voluntarily and knowingly given and that each has had the opportunity to consult with counsel prior to signing this Agreement. The persons executing this Agreement hereby certify that they have the authority to do so.

IN WITNESS WHEREFORE, the Parties have caused this Settlement Agreement to be signed on this __th day of June 2019.

NANCY ISAACSON, CHAPTER 7 TRUSTEE FOR AKESIS, LLC

By: _____
      NANCY ISAACSON

QUARTESIAN, LLC

By: _____
      BENJAMIN F. JACKSON
      PRESIDENT / CEO

# EXHIBIT B

| |
|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**<br>**Caption in compliance with D.N.J. LBR 9004-1**<br><br>**FREEDMAN LAW, LLC**<br>Terri Jane Freedman, Esq.<br>9 Elkin Drive<br>Livingston, New Jersey 07039<br>Telephone: (973) 985-9408<br>E-mail: tjfreedman@freedmanlawllc.com<br><br>*Attorneys for Nancy Isaacson, Chapter 7 Trustee* |

| | |
|---|---|
| In re:<br><br>AKESIS, LLC,<br><br>            Debtor. | Case No.: 15-22985 (JKS)<br><br>Chapter 7 |
| Nancy Isaacson, Chapter 7 Trustee,<br><br>            Plaintiff(s),<br><br>v.<br><br>HealthPoint Medical Group, Inc.,<br><br>            Defendant(s). | Adv. No.: 17-01414 (JKS)<br><br>Judge: Sherwood |

## SETTLEMENT AGREEMENT

This Agreement is made as of the date indicated below, by, between and among Nancy Isaacson, Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate of Akesis, LLC ("Estate"), and HealthPoint Medical Group, Inc. ("HealthPoint").

WHEREAS, Debtor, Akesis, LLC ("Debtor") filed a voluntary petition for relief under Title 11, Chapter 7 of the United States Code (the "Bankruptcy Code") on July 10, 2015 (the "Petition Date"); and

WHEREAS, on or about July 13, 2015, the Trustee was appointed pursuant to 11 U.S.C. § 701; and

WHEREAS, upon her investigation of the financial affairs of the Debtor, including her review of the Debtor's books and records, the Trustee came to believe that HealthPoint had received a transfer of funds from the Debtor in the amount of $15,840.56 within 60 days of the Petition Date, which the Trustee believes may be avoided by her as a preference payment pursuant to Section 547 of the Bankruptcy Code ("Trustee's Preference Claim"); and

WHEREAS, on or about June 29, 2017 the Trustee commenced adversary proceeding number 16-01743 against HealthPoint seeking to avoid and recover the above-reference transfers under Sections 547 and 550 of the Bankruptcy Code ("Adversary Proceeding"); and

WHEREAS, the parties, after negotiation and discussion, have agreed to compromise the Trustee's Preference Claim and the Adversary Proceeding; and

WHEREAS, in consideration of the foregoing and as and for their resolution and settlement of the issues in dispute between them without resort to litigation, the parties to this Settlement Agreement hereby agree to the following terms and conditions in settlement of the Trustee's Preference Claim and the Adversary Proceeding, subject to the approval of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure:

1. Within twenty (20) days of the execution of this Settlement Agreement (the "Agreement"), the Trustee shall cause to be filed with the Bankruptcy Court a Notice of Proposed Compromise or Settlement of Controversy in the form attached as **Exhibit A** and shall file a motion, in form and substance reasonably acceptable to HealthPoint, with the Bankruptcy Court seeking an Order of the Bankruptcy Court approving this Agreement (the "Order"), in form and substance reasonably acceptable to HealthPoint.

2. Within twenty (20) days of the Order becoming final and non-appealable, HealthPoint shall pay to the Trustee, in full and final settlement and full and final release of the Trustee's Preference Claim, the Adversary Proceeding any and all claims held by the Trustee against any of the HealthPoint Released Parties (as such term is hereinafter defined), the total sum of $7,500 (the "Settlement Payment") by check made payable to "**Nancy Isaacson, Chapter Trustee for the Estate of Akesis, LLC**" and mailed to Nancy Isaacson, Chapter 7 Trustee, Greenbaum, Rowe, Smith & Davis LLP, 75 Livingston Avenue, Roseland, NJ 07068.

3. Upon clearance of the Settlement Payment from HealthPoint, the Trustee, on behalf of the Debtor and the Estate, shall be deemed to have released, acquitted and forever discharged HealthPoint and its respective parents, subsidiaries, affiliates, officers, managing directors, shareholders, agents, employees, successors and assigns (the "HealthPoint Released Parties") of and from any and all claims relating to the Trustee's Preference Claim, the Adversary Proceeding, as well as any and all claims, allegations, rights, covenants, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, whether known or unknown, the Trustee ever had, now has or hereinafter can, shall or may have, against the HealthPoint Released Parties in her capacity as the Trustee for the Estate, and, except as set forth in paragraph 4 below, the HealthPoint Released Parties shall be deemed to have released the Debtor and the Estate of and from any and all claims relating to the Trustee's Preference Claim, the Adversary Proceeding as well as any and

all claims, allegations, rights, covenants, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, whether known or unknown, the HealthPoint Released Parties ever had, now has or hereinafter can, shall or may have, against the Trustee in her capacity as the Trustee for the Estate. Any and all claims asserted or asserted by the Trustee in the future against HealthPoint shall be disallowed in their entirety.

4. Upon clearance of the Settlement Payment, HealthPoint will be granted a claim against the Estate for the amount paid in this Settlement Agreement pursuant to Bankruptcy Code section 502(h).

5. Immediately, upon clearance of the Settlement Payment from HealthPoint, the Trustee will dismiss the Adversary Proceeding with prejudice.

6. Each party has the full power and authority and has taken all required action necessary to permit it to execute, deliver and perform its obligations under this Agreement.

7. Subject to Bankruptcy Court approval as contemplated herein, this Agreement constitutes a valid and legally binding obligation of each of the parties hereto, enforceable against each party, respectively, in accordance with its terms.

8. The interpretation and construction of this Agreement shall be governed by the laws of the State of New Jersey and the Bankruptcy Court shall retain jurisdiction to enforce this Agreement and any action, suit or proceeding arising out of or relating to this Agreement.

9. No amendment, waiver or modification of this Agreement or any covenant, condition, or limitation of this Agreement shall be valid unless memorialized in writing and executed by the parties hereto.

10. This Agreement contains the final and entire settlement between the parties regarding the resolution of the subject matter of this Agreement and is intended to be an integration of final expression of all prior negotiations, understandings and agreements between the parties regarding the resolution of same. Any other representations, undertakings or agreements with respect to the subject matter of this Agreement, whether oral, written or implied, are merged into and are superseded by the terms of this Agreement.

11. The parties have had the opportunity to draft, review, and edit the terms of this Agreement, no presumption for or against any party arising out of drafting all or any part of this Agreement will be applied in any action relating to, connected to, or involving this Agreement.

12. By entering into this Agreement, no party intends to acknowledge or shall be deemed to have acknowledged any liability or responsibility for damages. Rather, the parties to this Agreement merely wish to resolve disputed claims. It is expressly understood and agreed that this Agreement shall not be construed as an admission of liability by the parties to this Agreement, their affiliates or anyone else.

13. This Agreement may be executed by facsimile signatures or electronically transmitted signatures in .pdf form, which shall be deemed original, and in one or more counterparts, each of

which shall be deemed to be a duplicate original, but all of which taken together, shall constitute a single instrument.

14. This Agreement shall be binding upon the parties and their successors and assigns.

15. By the signatures below, the parties to this Agreement acknowledge that they fully understand and accept the terms contained in this Agreement, and represent and agree that their signatures are freely, voluntarily and knowingly given and that each has had the opportunity to consult with counsel prior to signing this Agreement. The persons executing this Agreement hereby certify that they have the authority to do so.

IN WITNESS WHEREFORE, the Parties have caused this Settlement Agreement to be signed on this 15 the day of July 2019.

NANCY ISAACSON, CHAPTER 7 TRUSTEE FOR AKESIS, LLC

By: _____
    NANCY ISAACSON


HEALTHPOINT MEDICAL GROUP, INC.

By: _____
    SCOTT KIZER
    SENIOR VICE PRESIDENT / CHIEF LEGAL OFFICER